UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| VS. | ) | CR No.: 06-10T |
| | ) | |
| | ) | |
| TYSON FORD | ) | |

**DEFENDANT'S MOTION FOR BRADY MATERIAL OR INFORMATION**

The Defendant, TYSON FORD, by and through his undersigned counsel, hereby moves the Court for an Order compelling the Government to disclose to the Defendant all information in its possession, custody or control, or which it has knowledge of, which is favorable to the Defendant and material to punishment, pursuant to Brady v. Maryland, 373 U.S. 83 (1963). In support thereof, the Defendant has filed with the Court contemporaneously herewith a Memorandum of Law.

Respectfully submitted this 27th day of March, 2006.

TYSON FORD, Defendant
By his Counsel,

Charles A. Tamuleviz Bar No.: 6115
Tamuleviz, Hultquist, & Bianchi, LLP
144 Westminster Street, Suite 302
Providence, Rhode Island 02903
Telephone: 401.490.2939
Facsimile: 401.490.2940

CERTIFICATION

I certify that on the 27th day of March, 2006, a copy of the within pleading was mailed, postage prepaid, to the following:

Peter F. Neronha, Esquire
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, Rhode Island 02903

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| VS. | ) | CR No.: 06-10T |
| | ) | |
| | ) | |
| TYSON FORD | ) | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR BRADY MATERIAL OR INFORMATION**

The Defendant, TYSON FORD, by and through his undersigned counsel, hereby submits the instant Memorandum of Law in Support of his Motion for Brady Material or Information.

I. Background

On October 5, 2005, the Defendant, Tyson Ford, was arrested by federal agents in South Kingstown, Rhode Island. Mr. Ford's arrest occurred during a transaction involving the exchange of six (6) firearms for $500 in currency and approximately 13.55 grams of crack cocaine. In addition to Mr. Ford, the other participants to the transaction were Special Agent Edward J. Troiano of the Bureau of Alcohol, Tobacco, Firearms and Explosives, and a government informant. The informant was known to Mr. Ford as "Bobby." Following his arrest, Mr. Ford was charged in a criminal complaint with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); use of a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c); and distribution of cocaine base, in violation of 21 U.S.C. § 841. On February 24, 2006, pursuant to a written plea agreement, Mr. Ford pleaded guilty to a two (2) count

Information, which charged him with one count of distribution of five (5) grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Mr. Ford has been detained since his arrest. Sentencing in this case is scheduled for June 23, 2006.

Mr. Ford first met Bobby, the informant, sometime in August 2005. They were introduced to each other by a mutual acquaintance. Mr. Ford is 22 years old. Mr. Ford does not know Bobby's exact age, however he believes Bobby is in his forties. It is also Mr. Ford's belief that Bobby has a significant criminal history. Additionally, it is believed that Bobby has been a government informant on multiple occasions.

From the time they were first introduced up through the day of his arrest, Mr. Ford suffered from a substance abuse problem. Consequently, during that time period Mr. Ford purchased prescription narcotics, e.g., vicodin and percocet, for his personal use from Bobby. As part of their relationship, Bobby purchased small quantities of crack cocaine for his personal use from Mr. Ford. In some instances, prescription narcotics were traded for crack cocaine. Although there were illicit narcotics transactions between Mr. Ford and Bobby involving drug quantities consistent with personal use only, none of the transactions involved firearms. Through the dynamic of their mutual substance abuse problems, their age difference, and the disparity in their respective levels of sophistication, Mr. Ford developed a comfort level and trust in the older, more worldly Bobby.

The transaction that occurred on October 5, 2005 was recorded on video and audio by government agents. There were also a couple of additional telephone conversations between Mr. Ford and Bobby that were recorded. Those conversations

took place prior to the October 5, 2005 transaction. However the initial conversations, wherein the transaction was proposed and its terms were discussed, were not recorded. Those initial conversations involved only Bobby and Mr. Ford. Special Agent Troiano did not have any interaction with Mr. Ford prior to October 5, 2005. Indeed, the only two witnesses with substantive knowledge of the genesis of the October 5, 2005 transaction are Mr. Ford and Bobby.

It has been Mr. Ford's contention throughout this case that Bobby initiated the October 5, 2005 transaction and conceived its terms. Specifically, the significantly larger quantity of crack involved in the instant transaction, as compared to their prior dealings, was proposed by Bobby. Additionally, Mr. Ford asserts that it was Bobby who interjected firearms into their dealings, which had previously only involved quantities of crack and prescription narcotics that were consistent with personal use. The quantity of crack, the inclusion of firearms, and the number of firearms, will have a potentially significant impact on Mr. Ford's Guidelines Sentencing Range and his ultimate sentence.

II. Legal Analysis

A defendant in a criminal case is entitled to the disclosure by the government of any evidence favorable to the accused that is possessed by the government and is material to either guilt or punishment. Brady v. Maryland, 373 U.S. 83 (1963). Information that may be used to impeach a government witness falls within the government's disclosure obligations. Giglio v. United States, 405 U.S. 150 (1972). A sentencing court can depart from the Guidelines and statutory minimums based on sentencing factor manipulation, if the Defendant satisfies his burden of proof in that regard. United States v. Villafane-Jiminez, 410 F.3d 74, 87 (1st Cir. 2005); United States v. Montoya, 62 F.3d 1, 4 (1st Cir.

1995). Sentencing factor manipulation occurs when a defendant, although predisposed to commit a minor or lesser offense, is entrapped in committing a greater offense subject to greater punishment. United States v. Villafane-Jiminez, 410 F.3d at 87, citing United States v. Barbour, 393 F.3d 82, 86 (1st Cir. 2004).

In the instant case, a determination that Bobby initiated the instant transaction and set the terms thereof, would form a sufficient basis for a finding of sentencing factor manipulation. This is especially true when considered in light of the overall circumstances of the case, including the nature of the relationship between Mr. Ford and Bobby, their historical interactions, and their respective levels of sophistication. In making such a determination, Bobby's credibility is of paramount importance. As such, any evidence that tends to corroborate Mr. Ford's contentions or tends to impeach Bobby, falls within the government's disclosure obligations pursuant to Brady and Giglio.

Based upon the foregoing, in addition to a general request for all evidence favorable to the accused in the possession of the government that is material to punishment, Mr. Ford specifically requests the following materials and information:

1. Any and all evidence of criminal conduct, federal or state, committed by Bobby;
2. A list of all judicial proceedings in any criminal cases involving Bobby, whether he was a witness, party or informant;
3. All written and recorded statements made by Tyson Ford;
4. Any and all information establishing the street price of 13.55 grams of crack cocaine on October 5, 2005;
5. Any and all information establishing the street price of firearms, of the types involved in the instant case, on October 5, 2005;
6. Any and all actions, promises or efforts, formal or informal, on the part of the government, its agents and representatives, to aid, assist or obtain benefits of any kind, for Bobby, including but not limited to, non-prosecution letters, monetary payments, and cooperation agreements.

In addition, Mr. Ford further requests all information to which he is entitled pursuant to Rule 26.2 of the Federal Rules of Criminal Procedure.

III. Conclusion

In consideration of the foregoing, the Defendant, Tyson Ford, respectfully requests that the Court grant his Motion for Brady material or information.

Respectfully submitted this 27th day of March, 2006.

TYSON FORD, Defendant
By his Counsel,

Charles A. Tamuleviz Bar No.: 6115
Tamuleviz, Hultquist, & Bianchi, LLP
144 Westminster Street, Suite 302
Providence, Rhode Island 02903
Telephone: 401.490.2939
Facsimile: 401.490.2940

CERTIFICATION

I certify that on the 27th day of March, 2006, a copy of the within pleading was mailed, postage prepaid, to the following:

Peter F. Neronha, Esquire
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, Rhode Island 02903