**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | **CR-06-10T** |
| | : | |
| | : | |
| **TYSON FORD** | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S**
**"MOTION FOR BRADY MATERIAL OR INFORMATION"**

The United States hereby opposes the defendant's "Motion For Brady Material Or Information", for the reasons set forth in the accompanying memorandum of law.

Respectfully submitted,

UNITED STATES OF AMERICA

By its Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

PETER F. NERONHA
Assistant U.S. Attorney

April 7, 2006

Certificate of Service

I hereby certify that on the 7th day of April 2006, I caused a copy of the within Government's In Opposition To Defendant's "Motion For Brady Material Or Information" to be served by first class mail on Charles A. Tamuleviz, Esq., 144 Westminster Street Street, Suite 302, Providence, RI, 02903.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | |
| v. | : | CR-06-10T |
| | : | |
| | : | |
| TYSON FORD | : | |

GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S "MOTION FOR BRADY MATERIAL OR INFORMATION"

## INTRODUCTION

On February 24, 2006, defendant pled guilty to a two-count Information charging him with distributing 13.55 grams of crack cocaine and being a felon in possession of six firearms. Now, in an apparent effort to stave off a lengthy period of incarceration, he claims that the extent of his admitted drug trafficking and weapons crimes were the result of sentencing manipulation by a government informant. Specifically, he claims that the government informant "initiated the instant transaction and set the terms thereof", and that this "form[s] a sufficient basis for a finding of sentencing factor manipulation." Hoping to find evidence that would support this claim, he seeks a variety of material from the government, much of it he apparently would use to attempt to impeach the government informant.

The defendant is not entitled to the impeachment material he seeks. The numerous conversations between the defendant and the government informant recorded and/or monitored by ATF Special Agent Edward Troiano demonstrate that no sentencing manipulation occurred

here. Accordingly, the government will rely on this evidence, as well as the defendant's statement to Agent Troiano following his arrest, at any hearing concerning the defendant's sentencing manipulation claim. The government will not call the informant. The requested impeachment material is therefore entirely irrelevant, and would serve only to disclose the identity of the informant.

**ARGUMENT**

It is well-settled in this Circuit that "sentencing factor manipulation is a claim only for the extreme and unusual case." United States v. Montoya, 62 F.3d 1, 4 (1st Cir. 1995). Accord, United States v. Fontes, 415 F.3d 174, 180 (1st Cir. 2005). Indeed, the First Circuit has gone so far as to say that "garden variety manipulation claims are largely a waste of time." Montoya, 62 F.3d at 4. As this Court has noted, "[s]entencing factor manipulation occurs when government agents have 'improperly' enlarged the scope or scale of the defendant's crime." United States v. Dion, 89 F.Supp.2d 185, 186 (D.R.I. 2000)(quoting Montoya, 62 F.3d at 3). The burden is on the defendant to show "that the government has acted 'improperly' and for the purpose of artificially enhancing the penalty." Id. (citing United States v. Gibbens, 25 F.3d 28, 31 (1st Cir. 1994)).

To meet this high threshold, a defendant must do more than "simply [] show[] that the idea originated with the government or that the conduct was encouraged by it, or that the crime was

prolonged beyond the first criminal act, or exceeded in degree or kind what the defendant had done before." Montoya, 62 F.3d at 3-4)(citations omitted). Accord, Dion, 89 F.Supp.2d at 186-87. See also United States v. Terry, 240 F.3d 65, 71 (1st Cir. 2001)("The government, when investigating the business of a drug dealer who by reputation sells both crack and powder cocaine, is under no obligation to buy only that product or quantity which would produce the smallest sentence for the defendant.")(emphasis added); United States v. Glaum, 356 F.3d 169, 180 n.7 (1st Cir. 2004)(rejecting defendant's sentencing manipulation claim based on argument "that he was predisposed to commit only small drug transactions and that the DEA manipulated him into larger transactions" because "[e]vidence concerning the defendant's predisposition is of marginal relevance to a sentencing manipulation claim"), cert. granted, 543 U.S. 1099 (2005)(judgment vacated on other grounds). "Rather, the defendant must demonstrate that the government's activities were 'carried to such a degree that the government's conduct must be viewed as 'extraordinary misconduct.'" Dion, 89 F.Supp.2d at 187 (quoting Montoya, 62 F.3d at 4). As this Court noted in Dion, the First Circuit has said:

> The standard is high because we are talking about a reduction at sentencing, in the teeth of a statute or guideline approved by Congress, for a defendant who did not raise or did not prevail upon an entrapment defense at trial. The standard is general because it is designed for a vast range of circumstances and of incommensurable variables. The most important of these, as we have stressed, is

> likely to be the conduct of the government, including reasons why its agents enlarged or prolonged the criminal conduct in question.

89 F.Supp.2d at 187 (quoting Montoya, 62 F.3d at 4). As this Court also noted in Dion, "[g]enerally, the cases that raise concerns regarding sentencing factor manipulation are those in which the sentence is subject to being increased by the unilateral action of government agents and those in which government agents require changes in the agreed upon course of action that alter the nature or magnitude of the offense." Id.

Here, the defendant would have this Court believe that he was a (somewhat) innocent dupe,[1] enticed by the government informant into agreeing to trade nearly half an ounce of crack cocaine for six firearms before Agent Troiano began to investigate him. Indeed, the defendant would have the Court believe that he became a thrall of the informant; otherwise, he never would have purchased firearms from Agent Troiano or paid for those firearms with such a large amount of crack cocaine. Unfortunately for the defendant, the facts, as demonstrated by his own words -- monitored and/or recorded by Agent Troiano -- are otherwise.[2]

---

[1]The qualifier arises from the defendant's admission in his motion that he had made several prior deliveries of crack cocaine "involving quantities consistent with personal use." Of course, defendant's use of the phrase "consistent with personal use" does little to mitigate his conduct -- these were still deliveries of narcotics for the personal use of someone else.

[2]Indeed, under the defendant's version of the facts, he arguably cannot even make a sentencing manipulation argument here. As noted above, such a claim requires "extraordinary misconduct" by the

In late September of 2005, the informant advised Agent Troiano that the defendant was distributing crack cocaine in the South Kingstown/Narragansett area and was trying to purchase firearms. Thereafter, on September 26, 2005, the informant placed a telephone call to the defendant at Agent Troiano's direction. The ensuing conversation was monitored by Agent Troiano.[3] The informant told the defendant that he had six guns left for sale. The defendant responded that he wanted all six guns, and asked for a price. The informant asked the defendant what he was offering. The defendant stated that he would pay "half and half", meaning half in cash and half in crack cocaine. The informant and the defendant agreed on a price of $400 in cash and $400 in crack cocaine. The defendant asked if the informant could get the guns for the defendant that

---

government, and under the defendant's version of the facts, the terms of the deal were complete before the government, i.e. Agent Troiano, began to investigate the defendant. The law as it pertains to the entrapment defense is instructive on this point. See, e.g., United States v. Rogers, 102 F.3d 641, 645 (1st Cir. 1996)(private person is "the government" for purposes of entrapment defense "if [a law enforcement agent] told [the private person] to apply the pressure or inducement [on the defendant] later deemed improper, and perhaps if [the law enforcement agent] knowingly tolerated it, but not if [the law enforcement agent] were ignorant of it."); United States v. Gendron, 18 F.3d 955, 962 (1st Cir. 1994)("government misconduct lies at the heart of the entrapment defense"; hence the law does not "permit an innocent minded defendant to raise an entrapment claim when a private person 'induced' him (through similar 'overreaching') to commit a crime . . . . the law does not authorize the defense in those circumstances, however 'outrageous' the private person's conduct.")(emphasis in original).

[3]This telephone call was also recorded, but the recording is inaudible.

night. The informant, in a ruse, stated that he could not, because he had to get the guns from Connecticut.

On September 29, 2005, the informant met with the defendant in South Kingstown. The meeting was audio-recorded[4], monitored, and observed from a distance by ATF Special Agents. During the meeting, the defendant delivered crack cocaine with a gross weight of 1.3 grams to the informant, in exchange for $100 in cash. The informant showed the defendant pictures of several firearms purportedly for sale. The defendant stated that he thought the informant was going to "come through" with the guns "the other day." The informant told the defendant that he wasn't going to sell him six guns for a 1/2 ounce of "garbage" crack. The defendant told the informant that he was willing to pay for the guns entirely with cash.

On October 4, 2005, the informant called the defendant at Agent Troiano's direction. The ensuing conversation was monitored and recorded by Agent Troiano. During this conversation, the informant and the defendant agreed on a final price for six firearms: a 1/2 ounce of crack cocaine and $500 in cash. The defendant and the informant agreed to meet with the supplier of the guns (Agent Troiano) on October 5, 2005.

As the defendant admitted at the change of plea hearing, on October 5, 2005, at the Holiday Inn in South Kingstown, he

[4]In anticipation of a sentencing hearing, the government has begun the process of having the relevant recorded conversations transcribed.

delivered 13.55 grams of crack to Agent Troiano, in exchange for six firearms and $500 in cash. During the exchange, the defendant, referring to the deal, told Agent Troiano, "I wasn't like pressuring it, you know, he just said he could get 'em, so I was like, if you can get 'em, I'll buy 'em." Following his arrest, the defendant told Agent Troiano that he could get a 1/2 kilogram of crack cocaine from his Providence supplier, if in return he could get out of jail. Agent Troiano declined the offer.

The monitored and/or recorded conversations described above, as well as the defendant's statement to Agent Troiano following his arrest, will be sufficient to defeat any sentencing manipulation claim here. The conversations (not to mention the delivery of nearly a half an ounce of crack cocaine to Agent Troiano itself) demonstrate that the defendant was a significant drug dealer who wanted guns, six of them, and was willing to pay what it cost to acquire them, whether in cash or a combination of cash and crack cocaine. This is not a case where "the government had the power to unilaterally increase" the defendant's sentence. Dion, 89 F.Supp.2d at 188. Rather, as in Dion, the defendant's "participation was required in order for a sale to take place and he had the ability to choose whether or not he was going to make the sale and how much he was willing to sell." Id. The conversations demonstrate that this also was not a case where the government "improperly altered the nature or magnitude of the crime that [the defendant] was inclined to commit by pressuring him to accept materially different

terms dictated by the government at the eleventh hour." Id. (emphasis added). The deal was discussed (with Agent Troiano listening in) over the course of more than a week, and the final price agreed to the day before the actual exchange. The defendant did not arrive for the intended exchange, only to have Agent Troiano insist that he deliver a greater amount of narcotics in payment for the guns.

Accordingly, in rebutting defendant's sentencing manipulation claim, the government will simply rely on the defendant's statements heard by, recorded by, or spoken to Agent Troiano. The government will not call the informant. The defendant is therefore not entitled to the material he seeks concerning the informant's criminal history, involvement in criminal judicial proceedings, or promises made by the government to the informant. That is simply impeachment material, and here there will be no witness to impeach. Certainly, under these circumstances, and at a stage in the proceedings where guilt has already been established, there is no basis for the disclosure of information which will serve only to identify a government informant. See United States v. Estrella, 567 F.2d 1151, 1153 (1st Cir. 1977)(for purposes of trial, (let alone sentencing), to justify disclosure of an informant's identity, "the defendant must indicate some concrete circumstances that might justify overcoming both the public interest in encouraging the flow of information and the informant's private interest in his own safety.").

With respect to the other material sought by the defendant, the government will provide all written and recorded statements of the defendant, to the extent not already provided. The government objects, however, to the defendant's request that it provide him with information "establishing the street price" of firearms and of 13.55 grams of crack cocaine on October 5, 2005. That information is not part of the government's evidence in this case, and the defendant does not, and cannot, cite to any authority for the proposition that the government is now required to procure such evidence.

**CONCLUSION**

For the reasons set forth above, the government respectfully requests that the defendant's motion be denied to the extent it seeks material other than the defendant's own statements.

UNITED STATES OF AMERICA

By its Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

PETER F. NERONHA
Assistant U.S. Attorney

April 7, 2006

## Certificate of Service

I hereby certify that on the 7th day of April 2006, I caused a copy of the within Government's Memorandum of Law in Opposition To Defendant's "Motion For Brady Material Or Information" to be served by first class mail on Charles A. Tamuleviz, Esq., 144 Westminster Street Street, Suite 302, Providence, RI, 02903.

Joan A. Mand