UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| VS. | ) | CR No.: 06-10T |
| | ) | |
| | ) | |
| TYSON FORD | ) | |

**DEFENDANT'S MOTION FOR A SENTENCE BELOW THE APPLICABLE SENTENCING GUIDELINES RANGE**

The Defendant, TYSON FORD, by and through his undersigned counsel, pursuant to 18 U.S.C. § 3553 and LR Cr 32 of the Local Rules of the United States District Court for the District of Rhode Island, hereby moves the Court to impose a sentence below the applicable sentencing guidelines range. In support thereof, the Defendant has filed contemporaneously herewith a supporting memorandum.

Respectfully submitted this 16th day of June, 2006.

TYSON FORD, Defendant
By his Counsel,

Charles A. Tamuleviz Bar No.: 6115
Tamuleviz, Hultquist, & Bianchi, LLP
144 Westminster Street, Suite 302
Providence, Rhode Island 02903
Telephone: 401.490.2939
Facsimile: 401.490.2940

CERTIFICATION

I certify that on the 16th day of June, 2006, a copy of the within pleading was mailed, postage prepaid, to the following:

Peter F. Neronha, Esquire
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, Rhode Island 02903

Heather McLoughlin
United States Probation Officer
United States Probation Office
2 Exchange Terrace, 3rd Floor
Providence, Rhode Island 02903

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| VS. | ) | CR No.: 06-10T |
| | ) | |
| | ) | |
| TYSON FORD | ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF HIS MOTION FOR A SENTENCE BELOW THE APPLICABLE SENTENCING GUIDELINES RANGE**

I. INTRODUCTION

The Defendant, TYSON FORD, by and through his undersigned counsel, hereby submits the instant Memorandum in support of his Motion For A Sentence Below The Applicable Sentencing Guidelines Range and in order to provide information to assist the Court in fashioning a sentence "sufficient but not greater than necessary" to achieve the statutory purposes of sentencing, as required by 18 U.S.C. § 3553(a), in light of United States v. Booker, 543 U.S. 220 (2005).

Booker restored district courts' ability to fashion a sentence tailored to the individual circumstances of a particular case and defendant by requiring courts to consider factors in addition to the sentencing range prescribed by the United States Sentencing Guidelines. Indeed, pursuant to 18 U.S.C. § 3553(a) the court is required to impose a sentence below the applicable range if such a sentence is sufficient to achieve the sentencing purposes set forth in 18 U.S.C. § 3553(a)(2). Essentially, the sentencing

purposes in § 3553(a)(2) are the following: punishment; deterrence; protection of the public; and appropriate correctional treatment for the defendant.

In the instant case, Mr. Ford respectfully requests that the Court consider several important mitigating factors in fashioning an appropriate sentence, including but not limited to the following. First, Tyson Ford had an exceptionally traumatic childhood. Second, Mr. Ford's psychological and emotional history is problematic. Third, the dynamic of the interactions between Tyson Ford and the Government's informant, Robert T. Schultheiss, including the disparity in the relative levels of sophistication between them. Fourth, Mr. Ford's post arrest commitment to repair and rebuild his life. When considered individually, collectively, and in the unique circumstances of this case, the aforementioned mitigating factors merit a sentence substantially below the applicable sentencing guidelines range.

## II. BACKGROUND

On October 5, 2005, Tyson Ford, was arrested by federal agents in South Kingstown, Rhode Island. On February 24, 2006, pursuant to a written plea agreement, Mr. Ford pleaded guilty to a two (2) count Information, which charged him with one count of distribution of five (5) grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Mr. Ford has been detained since his arrest on October 5, 2005. A Presentence Report was prepared by the United States Probation Office and made available to the parties on April 27, 2006. In the Presentence Report the applicable guidelines sentencing range was computed to be 100 to 125 months of incarceration. Sentencing in this case is scheduled for June 23, 2006.

## III. POST *BOOKER* SENTENCING

In United States v. Jiminez-Beltre, 440 F.3d 514, 518-519 (1st Cir. 2006)(en banc), the First Circuit set forth the appropriate approach for district courts to follow at sentencing. Initially, the court must calculate the correct guidelines sentencing range. Id. Next, any proposed departures should be considered, followed by the further determination whether other factors identified by either side warrant an ultimate sentence above or below the applicable guidelines range. Id. The sentencing court's discretion remains constrained by 18 U.S.C. § 3553(a), which requires courts to consider a number of factors enumerated within the statute. United States v. Smith, 445 F.3d 1, 3 (1st Cir. 2006), citing United States v. Pho, 433 F.3d 53, 61-62 (1st Cir. 2006). The sentence imposed by the court is subject only to the ultimate requirement of "reasonableness." United States v. Jiminez-Beltre, at 517.

## IV. STATUTORY SENTENCING FACTORS

### A. The History and Characteristics of the Defendant, 18 U.S.C. § 3553(a)(1)

Information concerning Mr. Ford's personal and family characteristics is set forth in detail in Part C of the Presentence Report ("PSR"). The picture painted in the PSR of Tyson Ford's childhood is disturbing at the least. Mr. Ford's mother used heroin during his pre-natal development. Indeed, both of Mr. Ford's parents had substance abuse problems during Tyson's childhood and were incarcerated for periods of time then. Even Mr. Ford's mother has frankly acknowledged that his childhood was "not too good." PSR at 16.

In addition to parental substance abuse problems, Tyson was also the victim of physical abuse during his childhood. Tyson lived with his sister and their father

approximately from the time he was 3 years old until he was 11 years old. During a portion of that time they resided in Florida, away from all other familial relations. Tyson's life with his father was volatile and violent. The father physically abused his children and threatened them to prevent disclosure of the underlying abuse. Eventually, the father's abuse was disclosed and custody of Tyson and his sister was awarded to their mother.

Unfortunately, by the time Tyson began living with his mother his behavioral problems had been established. Being use to physical responses to his behavior by his father, Tyson did not adjust to his mother's non-physical approach to parenting. Mrs. Ford has described Tyson's behavior during this time as "horrible." It should be noted that by this time, Tyson's mother had successfully addressed her substance abuse problem. Ultimately Mrs. Ford became a nurse and has been working in that profession.

During his adolescence, Tyson was placed in the custody of the Department of Children, Youth and their Families ("DCYF"). He was also incarcerated on occasion at the State of Rhode Island's juvenile detention facility. Nevertheless, Tyson's behavior did not improve.

Mr. Ford's psychological and emotional history is set forth in the PSR beginning at paragraph no. 75. The sheer volume of information contained in the Mental and Emotional Health section of the PSR is daunting. Indeed, that section of the PSR takes close to 3 ½ pages. Throughout his childhood and adolescence, Tyson has been diagnosed with several psychological conditions, which affect his ability to interact with others and conduct himself in an appropriate manner. For example, he has been diagnosed with anxiety disorder, conduct disorder, ADHD (Attention Deficit

Hyperactivity Disorder), and masked depression. PSR at 18-19. Tyson has received treatment at various facilities including Butler Hospital. According to records from Butler Hospital, Tyson's diagnosis included Intermittent Explosive Disorder and Oppositional Defiant Discharge. Viewed in the light of his childhood experiences and his psychological history, Mr. Ford's conduct becomes understandable.

B. The Nature and Circumstances of the Offense, 18 U.S.C. § 3553(a)(1)

The instant offenses occurred on October 5, 2005 in a single transaction wherein Mr. Ford agreed to purchase 6 firearms in exchange for ½ ounce of crack and $500. The transaction on October 5, 2005 was recorded on video and audio by the Government. A few telephone conversations between Tyson and Robert T. Schultheiss ("Bobby"), the informant, were also recorded in the days prior to October 5, 2005. However, the conversations comprising the genesis of the transaction were not recorded.

Mr. Ford first met Bobby sometime in August 2005. They were introduced to each other by a mutual acquaintance. Mr. Ford is 22 years old. Mr. Ford does not know Bobby's exact age, however he believes Bobby is in his forties. Inasmuch as this Court has sentenced Bobby in a firearms case (United States v. Schultheiss, CR No.: 99-084T), as well as multiple supervised release violations, the Court has first-hand knowledge of Bobby's criminal history, activities as an informant, and personal characteristics. It appears from the docket sheet for the aforementioned case that Bobby has an extended relationship with the Government and has significant experience with the criminal justice system's rewards for informants. The defense expects that at the sentencing hearing it will seek to call Special Agent Edward Troiano to testify related to the foregoing.

From the time he was first introduced to Bobby up through the day of his arrest, Mr. Ford suffered from a substance abuse problem. Consequently, during that time period Mr. Ford purchased prescription narcotics, e.g., vicodin and percocet, for his personal use from Bobby. As part of their relationship, Bobby purchased small quantities of crack cocaine for his personal use from Mr. Ford. In some instances, prescription narcotics were traded for crack cocaine. The extent of the interactions between Tyson and Bobby are exemplified in Mr. Ford's cell phone bills. An analysis of those records shows that during the period from August 25, 2005 through October 5, 2005, Tyson received approximately 99 calls from Bobby and made approximately 31 calls to Bobby. (Copies of Mr. Ford's cell phone bills are attached hereto as exhibit A). Although there were illicit narcotics transactions between Mr. Ford and Bobby involving drug quantities consistent with personal use only, none of the transactions involved firearms. Through the dynamic of their mutual substance abuse problems, their age difference, and the disparity in their respective levels of sophistication, Mr. Ford developed a comfort level and trust in the older, more worldly Bobby, which ultimately led to Mr. Ford's participation in the subject transaction.

The type of conduct that is not present in this case is also significant in evaluating the circumstances of the instant offense. There is no evidence in the PSR that Tyson Ford was any type of major narcotics supplier. Indeed, the state felony conviction for distribution of marijuana, which is the predicate felony for the instant charge under 18 U.S.C. § 922(g), involved only 1 gram of marijuana. The foregoing quantity of marijuana is more consistent with personal use than distribution. There is no evidence that he had anyone working for him regarding narcotics distribution. Mr. Ford has never

been convicted of a firearms offense. In short, there is no evidence that Mr. Ford was engaged in major narcotics or firearms distribution.

C. The Need for the Sentence Imposed, 18 U.S.C. § 3553(a)(2)

The distribution offense that Tyson Ford pleaded guilty to includes an applicable mandatory minimum sentence of 60 months (5 years). A sentence of that length is a substantial sentence for anyone, and especially so for a young man such as Tyson. Such a sentence reflects the seriousness of the Mr. Ford's offenses, as well as providing just punishment and promoting respect for the law. No reasonable person familiar with the facts and circumstances of this case would think otherwise if Tyson were to be sentenced to 60 months imprisonment. Indeed, some would even think that such a sentence was too severe.

Tyson Ford has not let the time he has spent incarcerated since his arrest, a period of almost 7 months, pass idly by. He has completed a math class at the Wyatt Detention Facility. Tyson has also been working in the kitchen at the facility, for which he has received good reviews. Additionally, he has become involved in Bible study and religious classes. Tyson has also signed up for substance abuse classes. Not only do those activities evidence Mr. Ford's commitment to move his life in a positive direction, they also are indicative of his personal recognition of the need to reprioritize his life. Additionally, Tyson's uncle, Michael Larkin has indicated in his letter to the Court that he will provide Tyson with a job and a place to live when Tyson completes the incarcerative portion of his sentence. All of the foregoing factors militate in favor of a 60 month sentence deterring Tyson from committing future crimes and protecting the public, to the extent it is even arguably necessary, from further crimes by Mr. Ford. A term of

imprisonment of 60 months would also provide ample time to address the factors enumerated in 18 U.S.C. § 3553(a)(2)(D).

V. CONCLUSION

At first glance, this case may appear to be a familiar one, i.e., a crack and guns prosecution. However, when the details are examined this case is anything but typical. From the time he was in utero up through the present, Tyson Ford has had incredibly difficult circumstances thrust upon him. Despite it all, he has survived and reached a point where he has recognized the need to change the course of his life. Indeed, his post arrest conduct establishes that he has begun to do so. In consideration of the foregoing, the Defendant, TYSON FORD, respectfully requests that the Court impose a sentence of 60 months imprisonment, a term of supervised release that it deems appropriate, and no fine.

Respectfully submitted this 16th day of June, 2006.

TYSON FORD, Defendant
By his Counsel,

Charles A. Tamuleviz Bar No.: 6115
Tamuleviz, Hultquist, & Bianchi, LLP
144 Westminster Street, Suite 302
Providence, Rhode Island 02903
Telephone: 401.490.2939
Facsimile: 401.490.2940

## CERTIFICATION

I certify that on the 16th day of June, 2006, a copy of the within pleading was mailed, postage prepaid, to the following:

Peter F. Neronha, Esquire
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, Rhode Island 02903

Heather McLoughlin
United States Probation Officer
United States Probation Office
2 Exchange Terrace, 3rd Floor
Providence, Rhode Island 02903